DYK, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s holding that affirms the judgment that the claims are nonobvious. In my view, the majority improperly holds that the claim term “wound” can be limited to the disclosed embodiments in the specification, and, having done so, then misreads the specification as showing only embodiments treating harm to the surface of the body or skin wounds. Under the correct construction of this claim term, the asserted claims of U.S. Patent Nos. 5,636,643 (“'643 Pat *1026 ent”) and 5,645,081 (“'081 Patent”) would have been obvious.[1]
I
The proper construction of the term “wound” was extensively disputed pre-trial. Defendants Medela AG and Medela, Inc. (“Defendants”) argued that “wound” should be construed according to its plain meaning as “injury.” Defendants alternatively argued that “wound” should be construed as found in Stedman’s Medical Dictionary (26th ed.): “(1) trauma to any of the tissues of the body, especially that caused by physical means and with interruption of continuity [or] (2) a surgical incision.”
Plaintiffs Kinetic Concepts, Inc., KCI Licensing, Inc., KCI USA, Inc., and Wake Forest University Health Sciences (“Plaintiffs”) argued that “treating a wound” should not be construed at all because it is well within the common experience and understanding of every juror. Plaintiffs argued in the alternative that “wound” should be construed as “tissue damage to the surface of the body, including the epithelial and subcutaneous layers.” Although both parties introduced expert reports on claim construction to the district court, neither party relies on these expert reports on appeal.
Initially, the district court construed “wound” as “injury.” Kinetic Concepts, Inc. v. Blue Sky Med. Corp., No. 03-CV-0832, at 5 (W.D. Tex. June 28, 2005) (“Order Construing Patent '613 Terms ”). However, after approximately ten days of trial, the district court decided sua sponte that it would adopt the Plaintiffs’ approach and not instruct the jury on the proper construction of “wound.” Kinetic Concepts, Inc. v. Blue Sky Med. Corp., No. 03-CV-0832 (W.D. Tex. June 29, 2006) (“Second Amended Order Construing Patent '643 and '081 Claim Terms ”).
At trial, Plaintiffs argued the definition of “wound” to the jury in an effort to distinguish the prior art, particularly the public uses of Chariker and Jeter that involved applying negative pressure to surgical incisions including both a hole in the skin and a “fistula” or hole in an internal organ. Plaintiffs argued to the jury that a “fistula” was distinct from a “wound,” and that the purpose of the public uses of Chariker and Jeter was “fistula drainage” as opposed to “wound healing.”[2]
*1027 II
The district court’s failure to construe the term “wound” was a clear error. We have held that “[w]hen the parties raise an actual dispute regarding the proper scope of [the patent] claims, the court, not the jury, must resolve that dispute.” 02 Micro Int’l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed.Cir.2008). It is improper to argue claim construction to the jury because the “risk of confusing the jury is high when experts opine on claim construction.” CytoLogix Corp. v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1172-73 (Fed.Cir.2005); see Sundance, Inc. v. DeMonte Fabricating Ltd., 550 F.3d 1356, 1364 n. 6 (Fed.Cir.2008). In this case, the definition of the term “wound” was central to the case and a primary focal point of the Markman hearing; as a result, the court should have construed the term “wound.”
The appellees do not dispute that it was error to fail to construe wound, instead claiming that the issue “need not be resolved, however, since any error was harmless” under the claim construction now adopted by the majority. Appellee’s Br. 51. The majority agrees. However, there is no suggestion by either the majority or the appellees that the verdict could be sustained under the appellants’ proposed construction. Thus, the crucial question is whether the majority’s claim construction is correct. In my opinion it is not.
III
The majority construes “wound” to mean “tissue damage to the surface of the body, including the epithelial and subcutaneous layers” because “[a]ll of the examples described in the specification involve skin wounds.” Maj. op. at 1019. It is the words of the claim that define the scope of the patent. See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc). The words are generally construed according to their ordinary and customary meaning, that is, “the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.” Id. at 1313. This meaning is to be interpreted in the context of the entire patent, including the specification. Id. However, it is improper to import limitations from the specification into the claims where there is no indication that the specific examples in the specification are intended to be strictly coextensive with the claim. Id. at 1323.
The majority holds that the term “wound” should be understood as limited to damage to tissues near the surface of the body, particularly the skin, and should not include damage to organs. The majority points to no medical dictionary or other extrinsic evidence supporting this claim construction. The specification does not define “wound” or provide any examples of the types of harms that would not qualify as wounds under the claim terms. Nor does the specification state that the examples listed in the specification were intended to describe the entire invention. See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1343-44 (Fed.Cir.2001) (specification described “all embodiments of the present invention”). Nonetheless, the majority concludes that, because the specification examples supposedly only include descriptions of damage to the skin, the specification limits the kinds of wounds encompassed by the claim. In my view, our *1028 decision in Phillips bars us from construing the claims as limited by the specification examples, and the majority’s approach is without support in our post -Phillips cases.
But even if the examples could limit the claims, in my view the examples here are not limiting, and indeed the specifications confirm the inappropriateness of the majority’s construction. The specifications of both patents make clear that the examples are merely “illustrative.”[3] The specifications also state that the invention is “useful for treating a variety of wounds.” '648 Patent col.12 11.41-42. “Wounds that have exhibited positive response to treatment by the application of negative pressure include infected open wounds, decubitus ulcers, dehisced incisions, partial thickness burns, and various lesions to which flaps or grafts have been attached.” '643 Patent col.2 11.58-62. (emphasis added). The use of the illustrative and open language of “include” demonstrates that there may be other types of wounds that the specification does not expressly point out, but that would nonetheless be covered by the claim term “wound.” See SanDisk Corp. v. Me-morex Prods., Inc., 415 F.3d 1278, 1284 (Fed.Cir.2005); Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1344-45 (Fed.Cir.2003). Throughout the specifications, the term “wound” is used only in this broad and inclusive way. See, e.g., '643 Patent col. 13 11.23-29.
Moreover, the majority is incorrect in asserting that “[a]ll of the examples described in the specification involve skin wounds.” Maj. op. at 1019. In fact, a number of examples illustrate that the wounds at issue are not merely skin wounds but deep wounds that include damage to more than the skin, such as wounds in which bone was exposed, '643 Patent col.19 11.35-39, col.20 11.23-27, large quantities of fluid were draining, '643 Patent col.19 11.23-26, surgical incisions cut through the abdominal wall and did not heal, '643 Patent col.19 11.55-65, or bone was infected, '643 Patent col.20 11.49-61. See also '081 Patent eol.8 11.58-67, col. 9 11.19-27, 11.35-41. These examples disclose wounds with far more than mere “damage to the epithelial and subcutaneous layers,” suggesting that other kinds of damage, including fistulae caused by surgical incision, would be within the definition of “wound” as used in the claim. These examples explicitly identify benefits achieved in the healing of interior tissue. For example, '643 Patent col.19 11.55-65 and '081 Patent col.8 11.60-65 describe increased healing of the abdominal wall by granulation tissue in and through Prolene mesh, and '643 Patent col.19 11.23-26 and '643 Patent col.20 11.25-35 describe draining fluid from interior infections.[4]
In view of the inclusive language and examples of the specification, I would find a dictionary frequently used by a person of *1029 ordinary skill in the art significant in understanding the meaning of “wound” in the claim. See Phillips, 415 F.3d at 1322-23 (“[J]udges are free to consult dictionaries and technical treatises ... when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.” (quoting Vitron-ics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 n. 6 (Fed.Cir.1996))). The definition of “wound” provided by Stedman’s, an accepted medical dictionary,[5] includes “trauma to any of the tissues of the body” and “surgical incision.” In light of the disclosures of the specifications and the additional support of the dictionary, in my view the term “wound” as used in the claim includes fistulae caused by surgical incision.
TV
The uncontroverted evidence demonstrates obviousness under the construction that I would adopt. Extensive evidence was presented at trial of public uses to heal fistula’s caused by surgical incisions, by both Dr. Chariker and Dr. Jeter.[6] There was no testimony to the contrary, nor is there any contention that the claims would be nonobvious if “wound” were construed as I suggest. Under the correct claim construction the undisputed evidence demonstrates that the claims would have been obvious.
For the foregoing reasons, I respectfully dissent.

. The asserted claims are claims 1-3, 6-8, 11-14, 16, 26-29, and 32 of the '643 patent, and claims 1, 3, 5, 8, 9, 11-13, 27, 31, 33, 36, 37, 54, 56, 58, 61, 62, and 64-66 of the '081 patent.

. In opening and closing arguments, Plaintiffs attempted to distinguish the public uses of Chariker and Jeter by focusing on the fact that the method was usually used when there was a fistula: "this [Chariker-Jeter] is about fistulas, not about the wounds that we are talking about," J.A. 200862; "Remember Chariker-Jeter is healing — is drainage, not healing. Chariker-Jeter is fistula only," J.A. 205656; "Now, let's talk about Chariker-Jeter and I will repeat myself 400 times and I will shut up. Chariker-Jeter, fistulas, fistulas, fistulas, fistulas. It’s about drainage,” J.A. 205665. The testimony of Plaintiffs’ expert witness on validity, Dr. Orgill, is also illustrative:
Q: Is that wound healing?
A: No. That's fistula drainage.
Q: And why isn't that wound healing?
A: Well, Chariker-Jeter describes that they stop this device when the fistula closes. And usually these devices take about 16 days, that’s what they describe in their article, for this nasty fluid to stop coming out. And after that, when the fistula closes, then that's when the wound healing or the rest of the wound can start to heal.
J.A. 204932-35. Cross-examination on the definition of wound included an answer from this witness that "[v]eiy often people with the definition of tissue would separate tissues from organs, so, in other words, many people in their definition of tissue might not consider, for example, a kidney to be a tissue. I *1027 understand some people would, but some people would separate organ from tissues.” J.A. 205092. Testimony by an inventor also focused on this distinction: "It’s totally different. They're treating drainage. We’re treating a wound.... We're treating to close a wound. They're treating to control the fistula.”

. The '081 Patent specification states: "[t]hese examples are provided for illustrative purposes only and are not to be taken as limiting,” col.5 11.47-49, and "[t]he foregoing examples are illustrative of the present invention, and are not to be construed as limiting thereof,” col.9 11.46-48. See also '643 Patent col.21 11.43-45 ("The terms and expressions which have been employed are used as terms of description and not of limitation.”).

. To be sure, one of the identified purposes of the invention applies only to the skin. See '643 Patent col.l 11.20-25 (describing the "zone of stasis” in which blood flow to the skin around a wound is restricted as a problem addressed by the invention). However, we have held that "[t]he court’s task is not to limit claim language to exclude particular devices because they do not serve a perceived purpose’ of the invention.... An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them.” E-Pass Techs., Inc. v. 3Com Corp., 343 F.3d 1364, 1370 (Fed.Cir.2003).

. Plaintiffs’ expert witness testified that Sted-man’s is a medical dictionary used in the profession. Plaintiffs even referenced the definition of wound provided by Stedman’s in filings to the FDA describing the full scope of wounds that could be treated by their device.

. The parties do not dispute that this evidence meets the definition of a prior art public use under 35 U.S.C. § 102(b).