**MOBILE HI–TECH WHEELS,**
**Plaintiff,**

v.

**CIA WHEEL GROUP, Defendant.**

**No. CV 04–09514 SVW (RZx).**

United States District Court, C.D. California.

March 20, 2007.

Edward R. Schwartz, Christie Parker & Hale, Pasadena, CA, for Plaintiff.

Duncan M. Palmatier, S. J. Christine Yang Law Offices, Fountain Valley, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL OR JUDGMENT AS A MATTER OF LAW [164]

STEPHEN V. WILSON, District Judge.

## I. INTRODUCTION

This was a patent infringement case brought by Plaintiff Mobile Hi–Tech Wheels against Defendant CIA Wheel Group. Both companies manufacture high-end wheels and rims. Plaintiff alleged that one of Defendant's wheels infringes Patent D501,173 (Vehicle Front Face) ("'173 Patent"), which was issued on

January 25, 2005 to Plaintiff. The '173 patent is a design patent for a vehicle-wheel front face.[1] On February 9, 2006, the Court entered summary judgment in favor of Plaintiff that the '173 was valid, finding that genuine issues of material fact existed as to the substantial similarity of the accused infringing wheel to Plaintiff's '173 patent and as to the '173 patent's point of novelty.[2] (Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment, Feb. 9, 2006.) The Court found that the '173 patent was presumptively valid and that Defendant had failed to overcome this presumption of validity. (*Id.*)

On October 17, 2006, counsel began opening arguments in the trial. However, the Court declared a mistrial after it became apparent that issues concerning the Figures in the '173 patent needed to be resolved. Specifically, the originally issued '173 Patent contained a set of inconsistent figures. Figure 1 was a perspective view of the vehicle-wheel front face and did not contain lines representing a solid surface behind the apertures. (*Id.*) However, Figure 2 was a front elevational view of the design and it did contain lines representing a solid surface behind the apertures. Whether the '173 Patent was construed to claim a solid surface behind the apertures was potentially dispositive on the question of infringement because the accused device lacked a solid surface behind its apertures.

On October 27, 2006, the Court issued an Order clarifying the scope of the '173 Patent, granting Plaintiff's motion to exclude evidence regarding the validity of

the '173 Patent, dismissing Plaintiff's unfair competition claim, and granting Defendant's motion to exclude evidence regarding the alleged infringement of a different patent. (Order Clarifying Patent Figures, Oct. 27, 2006.) With regard to the inconsistency in the figures, the Court ordered "that Figure 1 in the '173 patent be interpreted to include the corrected Figure 1, which has lines representing a solid surface behind the apertures." (*Id.* at 15.)

A second trial began on November 7, 2006. Prior to submission of the case to the jury, Defendant moved for judgment as a matter of law (JMOL) and for a new trial pursuant to Rule 50(a). (Vol III Tr: 105:18–107:18.) Defendant argued that the motion should be granted because the patent was invalid and unenforceable (Vol III Tr: 105:25–106:20.) and because the Court improperly mixed issues of claim construction with infringement. (Vol III Tr: 107:4–14.) The Court deferred ruling on Defendant's Rule 50(a) motion and submitted the case to the jury. The jury returned a verdict of infringement and awarded Plaintiff $300,000 in damages based on lost royalties.[3]

Defendant has now filed a renewed motion for JMOL pursuant to Rule 50(b), or in the alternative, a new trial pursuant to Rule 50(b) and Rule 59(a). Defendant argues that a new trial or JMOL is warranted for five reasons: (1) the '173 Patent was invalid and unenforceable as a matter of law; (2) the Court erred in carving out the functional elements; (3) the Court improperly mixed issues of claim construction and infringement; (4) the evidence was

---

1. A "vehicle-wheel front face" is more commonly referred to as a customized or decorative wheel-rim.

2. The Hon. Ronald S.W. Lew denied the motions for summary judgment. The case was subsequently reassigned to the Hon. Stephen V. Wilson on September 22, 2006.

3. A special jury verdict was returned in favor of Plaintiff. The jury found: (1)(2)(3)(4)(5). (Special Jury Verdict in favor of Plaintiff, Nov. 13, 2006.)

insufficient, as a matter of law, to support infringement; and (5) the evidence was insufficient, as a matter of law, to support a royalty of $48.25/wheel. For the reasons discussed below, Defendant's motion is DENIED.

## II. STANDARD FOR A MOTION FOR A JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

Defendant renews its motion for judgment as a matter of law pursuant to Rule 50(b), or in the alternative, a new trial pursuant to Rule 50(b) and Rule 59(a). Although this is a patent case, the Court applies Ninth Circuit law for procedural issues not unique to patent law such as motions for judgment as a matter of law or a new trial. *Sulzer Textil A.G. v. Picanol N.V.,* 358 F.3d 1356, 1363 (Fed.Cir.2004).

### A. Motion for Judgment as a Matter of Law or in the Alternative, a New Trial Pursuant to Federal Rule of Civil Procedure 50

■ Rule 50(a) provides that a party may move for judgment as a matter of law "at any time before the case is submitted to the jury." Fed.R.Civ.P. 50(a)(2). The Court may grant the motion "if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a)(1). "Because the district judge lacks the authority to resolve disputed issues of fact under those circumstances, judgment as a matter of law is appropriate only if no reasonable jury could find for a party on that claim. This necessarily means that the court must draw all reasonable evidentiary inferences in favor of the non-moving party." *Ritchie v. United States,* 451 F.3d 1019, 1022–1023 (9th Cir.2006). *See also Graves v. City of Coeur D'Alene* 339 F.3d 828, 838 (9th Cir. 2003) ("Judgment as a matter of law is proper if the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion."); *Murphy v. F.D.I.C,* 38 F.3d 1490, 1495 (9th Cir.1994) ("[w]e are required to sustain a judgment based on a jury verdict if it was supported by ... such relevant evidence as reasonable minds might accept as adequate to support a conclusion.") (internal quotation marks omitted).

"If the court does not grant a motion for judgment as a matter of law made under [Rule 50(a)], the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment or—if the motion addresses a jury issue not decided by a verdict—no later than 10 days after the jury was discharged. The movant may alternatively request a new trial or join a motion for a new trial under Rule 59." Fed.R.Civ.P. 50(b).

■ The procedural prerequisite that a party move for JMOL pursuant to Rule 50(a) prior to submission of the case to a jury in order to renew its motion for JMOL after trial is a strict requirement. *See Farley Transp. Co. v. Santa Fe Trail Transp. Co.,* 786 F.2d 1342, 1346 (9th Cir. 1986) ("the requirement that [a JMOL] motion be made at the close of all the evidence is to be strictly observed"). Thus, the failure to move for a JMOL prior to submission of the case to the jury precludes a party from bringing a renewed motion for JMOL after trial. *Janes v. Wal–Mart Stores Inc.,* 279 F.3d 883, 886–887 (9th Cir.2002); *see also Savino v. C.P. Hall Co.,* 199 F.3d 925 (7th Cir.1999) (failure to move for JMOL prior to submission of the case to the jury constitutes waiver of the argument post-trial); *Queenie, Ltd. v. Nygard Intern.,* 321 F.3d 282 (2d Cir. 2003) (same); *Neely v. American Family*

*Mut. Ins. Co.,* 930 F.Supp. 360 (N.D.Iowa 1996) (same); *Taber Partners I v. Insurance Co. of North America, Inc.,* 917 F.Supp. 112 (D.Puerto Rico 1996).

### B. Motion for a New Trial under Rule 59

▇ Rule 59(a) provides that "A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). "The authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. et al. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980).

▇ A new trial may be granted if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Graves v. City of Coeur D'Alene* 339 F.3d 828, 839 (9th Cir.2003); *see also City Solutions, Inc. v. Clear Channel Communications* 365 F.3d 835, 843 (9th Cir.2004) ("A new trial is warranted where the verdict is contrary to the clear weight of the evidence and the verdict results in the miscarriage of justice."); *United States v. 4.0 Acres of Land* 175 F.3d 1133, 1139 (9th Cir.1999) ("The trial court may grant a new trial, even though the verdict is supported by substantial evidence, if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.' ") (quoting *Oltz v. St. Peter's Community Hosp.,* 861 F.2d 1440, 1452

(9th Cir.1988)). However, "a district court may not grant or deny a new. trial merely because it would have arrived at a different verdict." *United States v. 4.0 Acres of Land,* 175 F.3d 1133, 1139 (9th Cir.1999) (citing *Wilhelm v. Associated Container Transp. (Australia) Ltd.,* 648 F.2d 1197, 1198 (9th Cir.1981)).

## III. DISCUSSION

▇ Defendant argues that a new trial or JMOL is warranted for five reasons: (1) the '173 Patent was invalid and unenforceable as a matter of law; (2) the Court erred in carving out the functional elements; (3) the Court improperly mixed issues of claim construction and infringement; (4) the evidence was insufficient, as a matter of law, to support infringement; and (5) the evidence was insufficient, as a matter of law, to support a royalty of $48.25/wheel.

### A. The '173 Patent Was Not Invalid and Unenforceable as a Matter of Law

Plaintiff introduced into evidence the originally issued version of the '173 Patent at trial. (Tr. Exh. 36.) The original version of the '173 Patent contains four figures depicting the claimed design. Figure 1 is a perspective view of the vehicle-wheel front face and does not contain lines representing a solid surface behind the apertures. (*Id.*) Figure 2 is a front elevational view of the design and it does contain lines representing a solid surface behind the apertures.[4] (*Id.*) Thus, from the face of the originally issued patent, the drawings showed two different designs—one without a backplate and one with a backplate.

The Court determined that the inconsistency between Figures 1 and 2 was a

---

4. Figure 3 is an alternative embodiment of the design in which the front face of the wheel rim is rotatable with respect to the rim.

(*Id.*) Figure 4 is a side elevational view of both embodiments. (*Id.*)

clerical error that was correctable. (Order Clarifying Patent Figures, Oct, 27, 2006.) The Court ordered "that Figure 1 in the '173 patent be interpreted to include the corrected Figure 1, which has lines representing a solid surface behind the apertures." (*Id.* at 15.) Defendant argues that the Court erred in finding the inconsistency was correctable as a clerical error and therefore the Patent was invalid for indefiniteness.

### 1. *History of the '173 Patent*

On April 28, 2004, Plaintiff sent a design patent application for the '173 patent to the Commissioner for Patents. (Palmatier Decl. Ex. 3 at 1.) The application contains the figures at issue depicting the wheel design. (*Id.* at 7–9.) Figure 1 does not include lines representing a solid surface behind the apertures. (*Id.* at 7.) Figures 2 and 3 do contain lines representing a solid surface behind the apertures. (*Id.* at 8–9.)

On June 29, 2004, the Patent Examiner objected to the drawings in the application. (*Id.* at 12–13.) The Examiner explained:

The drawings are objected to in that the shade lines indicating a solid surface shown in the five oval apertures and the five v-shaped apertures in Figures 2–3 are not shown in Figure 1 that shows no solid structure behind the apertures. Each element of the drawings must be consistently shown among the views. **Correction of the drawings is required.**

(*Id.* at 13.) (emphasis in the original)

In response to the Patent Examiner's objections, Plaintiff filed an amendment on July 2, 2004. Plaintiff requested that the Examiner "substitute the enclosed and corrected Figure 1 for the corresponding drawing submitted with the application." (*Id.* at 18.) The correct Figure 1 Plaintiff submitted contained lines representing a solid surface behind the apertures. (*Id.* at 20.)

Despite Plaintiff's amendment, on January 25, 2005, the Patent issued by the PTO erroneously contained the original Figure 1, which does not contain lines representing a solid surface behind the apertures. (*Id.* at 2.)

On June 3, 2005, Plaintiff filed a Request for Certificate of Correction which asked the PTO to correct its erroneous inclusion of the original Figure One. Plaintiff explained that Figure One in the patent should have contained shaded lines representing a solid backplate:

A correction certificate, or if necessary, a corrected patent, is requested to substitute a corrected drawing of Figure 1 (copy attached) as submitted with applicant's Amendment of July 2, 2004, responsive to the Examiner's entirely correct requirement in an office action of June 29, 2004. The original incorrectly shaded version of Figure 1, as submitted with the application, was apparently inadvertently used in the issued patent.

(Ex. 36 at 32.) However, on October 9, 2006, Plaintiff filed a second Request for Certificate of Correction with the PTO. Plaintiff asserted that its previous statements and first Correction Request were mistaken. Plaintiff explained that the claimed invention should never have included the solid surface feature as part of the claimed design. (Ex. 36 at 38–39.) The following chart chronicles the set of various figures included in the '173 Patent:

| EVENT | FIGURE 1 | FIGURE 2 | FIGURE 3 |
|---|---|---|---|
| Initial Application for the '173 Patent | No backplate | Backplate | Backplate |

| | | | |
|---|---|---|---|
| PTO objects to the application and instructs Plaintiff to make the drawings consistent. Plaintiff submits the following figures: | Backplate | Backplate | Backplate |
| PTO commits a clerical error and issues the '173 Patent based on the set of drawings contained in the initial application: | No backplate | Backplate | Backplate |
| LAWSUIT FILED in March 2005 | | | |
| Plaintiff files for certificate of correction in June 2005 and submits the following figures: | Backplate | Backplate | Backplate |
| Plaintiff files a second certificate of correction in October 2005 and submits the following figures: | No backplate | No backplate | No backplate |

### 2. Correction of the Clerical Error

■ A threshold issue is whether the Court may consider Plaintiff's subsequent certificates of correction to the '173 Patent. The Federal Circuit has held that "A certificate of correction is only effective for causes of action arising after is was issued." *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1294 (Fed.Cir. 2000). Plaintiff filed this lawsuit prior to filing either of the certificates of correction. As a result, neither of the correction requests are to be given effect. *Id.* Instead, the Court must consider the '173 Patent as it existed at the filing of the lawsuit. As a result, the '173 Patent at issue contains inconsistent depictions of the claimed design: Figure 1 does not include lines representing a solid surface behind the apertures, while Figure 2 and 3 do contain lines representing a solid surface behind the apertures.

■ Faced with this inconsistency, the Court had to determine whether the inconsistency was the result of a clerical error, and if so, whether the Court had the power to correct the clerical error. With respect to utility patents, a district court has the power to correct minor typographical and clerical errors. *See I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 47 S.Ct. 136, 71 L.Ed. 335 (1926); *Novo Indus. L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed.Cir.2003).[5] The Federal Circuit has limited a district court's power to correct a utility patent to situations where "(1) the correction is not subject to reasonable debate based on consideration of the claim language and specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Id.* Defendant contends that the Court improperly applied both prongs of the *Novo* test.

■ Both parties made two assumptions by briefing whether the Court improperly applied the *Novo* test: (1) that the Court has the power to correct clerical errors in *design* patents, and (2) any correction to a *design* patent must be guided by the Federal Circuit's holding in *Novo*. These questions appear to be issues of first impression. The Court cannot locate any cases correcting an error in a design patent, and thus the Court also cannot locate any case applying *Novo* to a design patent. Despite the absence of any case-law, the Court believes that the rationale for correcting clerical errors in utility patents equally applies to the context of design patents.[6] Assuming that the Court

---

**5.** The Supreme Court's decision in *Essex* precedes the enactment of 35 U.S.C. §§ 254 and 255, which provide for corrections of mistakes by the patentee. However, the Federal Circuit held that "nothing in the enactment of either section 255 or 254 suggests that Congress intended to overrule *Essex* or to deny limited correction authority to the district courts." *Novo*, 350 F.3d at 1355.

**6.** In *Essex*, the Supreme Court justified correction of the clerical error by stating that the

can correct such errors, it can find no reason why the requirements of *Novo* should not similarly apply to corrections to a design patent. In adopting the *Novo* standard, the Court recognizes that Novo's language cannot be literally applied. For example, *Novo* requires the Court to consider the "claim language and specification." In contrast to utility patents, the scope of a design patent is based on what is shown in the application drawing. *In re Mann,* 861 F.2d 1581, 1582 (Fed.Cir.1988). Therefore, the first prong of the *Novo* test must obviously be adapted to focus on the drawings rather than the claim language and specification.

■ Having concluded that a clerical error in design patent may be corrected if the *Novo* requirements are satisfied, the Court must first address the threshold issue of whether the inconsistency in the '173 Patent was a clerical error.

#### i. The Inconsistency between Figures 1 and Figure 2 Was a Clerical Error

■ The issuance of the '173 Patent with inconsistent figures was clearly a result of a clerical error. From the face of the patent, it is clear that there is an error because there is an inconsistency in the shading of Figures 1 through 3.

Plaintiff's original patent application contained inconsistent figures. On June 29, 2004, the Patent Examiner objected to this set of drawings on the grounds that Figure 1 and Figure 2 were inconsistent. In response, Plaintiff submitted a corrected Figure 1 which contained lines representing a solid surface. Rather than issue a patent containing the corrected Figure 1, (containing lines representing a solid surface) the patent office issued a patent containing the original Figure 1 (without lines). Thus, the Patent Office mistakenly

issued the '173 Patent containing the set of drawings to which it had objected on June 29 rather than issuing the Patent with the corrected drawings.

Having established that there was a clerical error, the Court must apply the two prongs of the *Novo* to determine whether the error may be corrected. *Novo,* 350 F.3d at 1357.

#### ii. The Correction Is Not Subject to Reasonable Debate

■ Under the first prong of the *Novo* test, the Court must examine whether "the correction is not subject to reasonable debate." 350 F.3d at 1357. In its October 27 Order, this Court held that "the correction to the '173 patent is not subject to reasonable debate because no other correction is conceivable." However, Defendant contends that there is a reasonable debate concerning how the inconsistency in the Figures of the '173 Patent should be corrected.

In *Novo,* the alleged error involved claim 13 of a patent for window blinds. The relevant part of claim 13 stated "stop means formed on a rotatable with said support figure." *Id.* at 1352. Novo contended that Claim 13 contained a typographical error and suggested that it be corrected by either deleting the words "a rotatable with" or "with said." The district court agreed that there was a clerical error, and instructed the jury that the word "a" should be read as "and." *Id.* at 1353. The Federal Circuit held that the alleged error was not apparent "from the face of the patent." *Id.* at 1357. The Court noted that *Novo* had suggested two different interpretations of claim 13, and the Court had adopted a third interpretation. *Id.* The Court also explained that the prosecution history did not shed light

correction "is not in any real sense, a remaking of the claim; but is merely giving to it the meaning which was intended by the appli-cant and understood by the examiner." 272 U.S. at 442, 47 S.Ct. 136.

on "what correction is necessarily appropriate or how the claim should be interpreted." *Id.* at 1358.

In contrast to *Novo*, where the contested phrase was subject to various possible corrections which would affect the interpretation of the patent, Figure 1 is only subject to one reasonable correction: the inclusion of the Figure 1 submitted in response to the PTO objection. In *Novo*, the district court had to speculate how to correct the alleged error. In contrast, no speculation is required in order to resolve the inconsistency in the '173 Patent. In light of the PTO's erroneous inclusion of a set of figures to which .it had previously objected and the Plaintiff's submission of an amended Figure 1, the only reasonable correction is to construe the Patent to include the amended Figure 1. In other words, this is the rare case in which the manner of the PTO's error is clearly documented and the record presents the Court with only one method of correction.

Although none of the cases applying. *Novo* are particularly useful because they involve utility patents, *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed.Cir.2005) presents the most analogous circumstances. In *Hoffer*, claim 22 of the patent referred to a dependent claim 38. *Id.* However, the patent lacked a claim 38, and thus the reference to claim 38 in claim 32 was unclear. *Id.* Although the district court found that the PTO was responsible for the error, the district court held that "it was powerless to correct the error." *Id.*

The Federal Circuit reversed, observing that "a patent should not be invalidated based on an obvious administrative error." *Id.* Applying *Novo*, the Federal Circuit first held that "[t]his error in dependency of claim 22 is apparent on the face of the printed patent." *Id.* The Federal Circuit then stated that "the [correction] is apparent from the prosecution history" and this "view is not contradicted by the prosecution history." [7] *Id.*

Just as the erroneous reference to a nonextant claim 38 was apparent on the face of the patent in *Hoffer*, the inconsistency in the drawings was apparent on the face of the '173 Patent. As discussed above, the inconsistency is only subject to one reasonable correction. Therefore, the correction is not subject to reasonable debate. Having satisfied the first prong of *Novo*, the Court must next analyze whether the prosecution history of the '173 suggests a different interpretation.

### iii. The Prosecution History Does not Suggest a Different Interpretation of the Claims

The second prong of *Novo* requires the Court to examine whether "the prosecution history does not suggest a different interpretation of the claims." *Novo*, 350 F.3d at 1357. Defendant raises two arguments regarding the second prong of the *Novo* analysis: (1) the correction is subject to reasonable debate due to the Plaintiff's Requests for Certificate of Corrections,[8] and (2) the Court's alleged failure to apply the second prong in *Novo*.

---

7. Specifically, "The patent application as filed and as prosecuted contained independent claim 38 and dependent claim 39. During prosecution both claim 38 and claim 39 were allowed, but some earlier claims were cancelled. In preparation for printing, the examiner renumbered claim 38 as claim 21, and renumbered claim 39 as claim 22. However, the examiner did not make the corresponding change in the text of claim 22. Thus although

claim 39 was· renumbered as claim 22, the internal reference to claim 38 was not changed." 405 F.3d at 1331.

8. While framed in the language of the first *Novo* prong, this argument actually falls within the second prong of the *Novo* test, because it relates to the prosecution history of the patent.

### 1. Plaintiff's Requests for Certificate of Correction

First, Defendant asserts that correction is subject to reasonable debate due to the Plaintiff's requests for certificate of corrections. Specifically, Plaintiff first requested that the '173 Patent be corrected to include the Figure 1 with shaded lines so that all of the Figures contained shaded lines.[9] However, four months later Plaintiff submitted a second request asking the PTO to instead correct Figures 2 and 3 so that none of the Figures contained shaded lines. Defendant argues that the correction must be subject to reasonable debate if the Plaintiff has taken inconsistent positions.

■■■ Defendant's argument lacks merit for two reasons. First, under *Southwest,* any subsequent certificates of correction cannot be considered. Although neither *Southwest* nor *Novo* expressly prohibited the Court from examining requests for certificates of correction, consideration of the certificates would contradict the Federal Circuit's rationale for not considering requests for correction.

Second, even if the Court considered Plaintiff's requests for certificates of correction, these requests do not establish that the correction is subject to a reasonable debate. Instead, Plaintiff's inconsistent requests for correction merely reflect Plaintiff's inartful trial strategy. Specifically, the attorney who prosecuted the patent, Russell Palmer, applied for the first certificate of correction after noticing the inconsistency in the '173 Patent so that

Figure 1 was corrected to contain a solid metal backplate. Apparently unbeknownst to Palmer, Plaintiff's trial attorney was meanwhile arguing that the inconsistency in the '173 Patent be construed so that the design was interpreted not to contain a solid metal backplate.[10] Only weeks before trial, Plaintiff's trial attorney discovered that Palmer had applied for the certificate of correction. Realizing that the application for correction undermined his argument that the design does not include a backplate, Plaintiff applied for a second correction in attempt to disclaim the first request for a correction.

Clearly, Plaintiff's changing positions regarding the applications for certificate of correction were driven by trial strategy rather than genuine confusion over the scope of the claimed design.[11] While Plaintiff's second request for a certificate of correction was disingenuous and may have contained misrepresentations, it does not demonstrate that a reasonable debate exists. As a result, even if Plaintiff's applications for certificates of correction are considered, the applications do not demonstrate a reasonable debate about the correction to the clerical error nor does such prosecution history suggest a different interpretation.

### 2. The Court's Alleged Failure to Apply the Second Prong of Novo

Defendant argues that the Court misapplied *Novo* because the Court failed to examine whether the prosecution history

---

9. In other words, Plaintiff asked the PTO to include the Figure 1 which Plaintiff submitted in response to the initial PTO objection.

10. Plaintiff's attorney apparently wanted to argue that the design lacked a solid metal backplate because the presence of the backplate would likely make it more difficult to prove infringement under the ordinary observer test.

11. Similarly, Defendant's argument that a reasonable debate exists is driven by strategic concerns rather than an objective evaluation of the '173 Patent. Specifically, Defendant does not want the patent corrected because it wants to utilize the inconsistencies between Figure 1 and Figure 2 to argue that the patent is invalid.

of the '173 Patent suggests a different interpretation of the claims in its October 27, 2006 order. At best, this argument is a misreading of the Court's prior order.

In the Court's October 27, 2006 order, the Court first acknowledged the two steps test of *Novo*. (Order Clarifying Patent Figures, Oct. 27, 2006, at 5.) After analyzing the first *Novo* prong, the Court proceeded to apply the second prong:

> Second, the prosecution history does not suggest a different interpretation of the claim. Instead, the prosecution history is unambiguous that the '173 patent would have contained the corrected Figure 1 but for the PTO's error. Therefore, correction of the '173 patent to include the corrected Figure 1 with the lines is proper under *Novo*.

(Order Clarifying Patent Figures, Oct. 27, 2006, at 6.) Thus, the record clearly reflects that the Court did not fail to examine the prosecution history of the '173 Patent.

It is possible that Defendant's argument that the Court failed to examine the prosecution history stems from Defendant's disagreement over the Court's treatment of Plaintiff's requests for certificates of correction. However, as discussed above, even if the applications are considered, the Court finds that the applications do not suggest a different interpretation.

As a result, the Court did not err in determining that the inclusion of the original Figure 1 was a clerical error and properly applied the two-step *Novo* analysis. The error in the '173 Patent was properly corrected by interpreting Figure 1 to include lines representing a solid surface and Defendant is not entitled to a new trial or JMOL on the grounds that the '173 Patent was invalid and unenforceable as a matter of law.

**B. The Court Did Not Err in Carving Out the Functional Elements**

Outside of the presence of the jury, the Court heard testimony concerning the functionality of the backplate, (Vol. II Tr: 11:4–37:19; 38:1–45:22.), and heard arguments from counsel. (Vol. II Tr: 45:24–49:20.) The Court concluded that the backplate was functional and addressed the jury concerning the issue of functionality:

> The question you will have to decide is whether the plaintiff's patent is infringed by defendant's product, that is, Exhibit 24. And you've heard a lot of discussion about this back plate on the plaintiff's patent. I am telling you that in comparing the plaintiff's patent to the defendant's wheel, Exhibit 24, you're not to consider the back plate. In other words, the back plate is not for you to consider. You're just to consider the other aspects of the patent as compared to the product.

(Vol. II Tr: 52:4–12.)

Defendant argues that it was legal error for the Court to "carve out" or exclude the functional features of the '173 Patent from the infringement analysis. (Def.'s Mot. At 18.) Defendant contends that to exclude features from the claim of a design patent, "those features must be shown, if at all, in broken lines." (*Id.*) Defendant's interpretation of patent law is mistaken. While *ornamental* features can only be excluded from the claim of the design patent through the use of broken lines, *functional* features must be excluded regardless of whether those features are disclosed through broken lines.

In *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 825 (Fed.Cir.1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 975 (Fed.Cir. 1995), the Federal Circuit held that "Where ... a patented design is composed

of functional as well as ornamental features, to prove infringement a patent owner must establish that an ordinary person would be deceived by reason of the common features in the claimed and accused designs which are ornamental." Applying this rule to its infringement analysis, the Federal Circuit compared "the similarity of the ornamental features of the [accused] device and the patented design." *Id.* at 826. This rule exists because "A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent." *Elmer & HTH Inc. v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir.1995) (citing *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed.Cir.1993)).

■ The Court interprets *Read* to require district courts to exclude functional elements of the claimed design from the infringement analysis. *See also Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1323 (Fed.Cir.1998) ("In determining this overall similarity in design, the ordinary observer must be deceived by the features common to the claimed and accused designs that are ornamental, not functional."). However, Defendant asserts that the Court may only exclude functional features if those features are depicted with broken lines in the patent drawings. Defendant's assertion results from a misreading of several Federal Circuit cases. Although select quotations from these cases seemingly support Defendant's interpretation, a closer examination of these cases reveals that Defendant's position completely lacks support in the caselaw.

First, Defendant quotes *Elmer & HTH, Inc. v. ICC Fabricating, Inc.*, 67 F.3d 1571 (Fed.Cir.1995) in support of its argument. In *Elmer*, the Federal Circuit reviewed the district court's denial of ICC's JMOL that it did not infringe the design patent at issue. *Id.* at 1575. The patent claimed an "ornamental design for a vehicle top sign holder, as shown and described." *Id.* at 1577. The design for the sign included "triangular vertical ribs and an upper protrusion." *Id.* On appeal, the Plaintiff contended that the vertical ribs and upper protrusion were functional rather than ornamental features. *Id.* The Federal Circuit observed that "HTH could have omitted these features from its patent application drawings. HTH did not do so, however, and thus effectively limited the scope of its patent claim by including those features in it." *Id.*

Defendant refers to this quotation in support of its proposition that functional features cannot be excluded unless the exclusion is contained in the drawings through the use of broken lines. However, Defendant's interpretation of *Elmer* is mistaken because the Federal Circuit concluded the vertical ribs and upper protrusion were *ornamental* features rather than functional features. *Id.* ("The claimed design, as indicated above, is limited to a vehicle sign having, inter alia, triangular vertical ribs and an upper protrusion. ICC's sign lacks these ornamental features.") As a result, the Federal Circuit merely held that *ornamental* features, namely the ribs and protrusion, could not be excluded from the infringement analysis because these ornamental features were not excluded from the patent application drawings. Thus, *Elmer* did not address the exclusion of functional features.

Similarly, Defendant asserts that in *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed.Cir.2001), "the defendants argued that certain features of the patent were functional and should be excluded from [sic] scope of the claimed design ... [and][t]he Federal Circuit held that features not shown in broken lines are part of the claimed design." (Def.'s Mot. at 17.) *Door–Master* involved patents for

doors and door frames. Defendant York-towne urged the court to construe the patent claims so that the rear features of the patent were not part of the protected design. *Id.* at 1313. First, the Court noted that the patentee had not shown the rear features in broken lines which would have excluded the features from the patented design. *Id.* Even though Defendant represents that the failure to show features in broken lines should be the end of this Court's inquiry, the Federal Circuit did not end its inquiry with this observation. Instead, the Federal Circuit next analyzed whether the rear features were functional. *Id.* Having concluded that the rear features were not functional, the Court finally concluded that "the rear features are proper bases for design protection in the [patent]." *Id.*

■■■ Thus, similar to *Elmer*, *Door–Master* involved ornamental features rather than functional features. *Door–Master* merely held that ornamental features could not be excluded from the infringement analysis if such ornamental features were not excluded from the patent application. Moreover, the Federal Circuit's consideration of whether the features were functional—after noting that the features were not depicted with broken lines—demonstrates that functional features can be excluded even if such features are not depicted with broken lines. Specifically, the Federal Circuit's analysis of whether the features were functional would have been irrelevant if the failure to depict the features with broken lines were sufficient to preclude exclusion. Therefore, the Federal Circuit's two-step analysis in *Door–Master* contradicts Defendant's theory.

Defendant similarly relies on *Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F.3d 1370 (Fed.Cir.2002) in support of its argument that functional elements can only be excluded through the use of broken lines. In *Contessa,* the Federal Cir-cuit stated that "in the 'ordinary observer' analysis, the patented design is viewed in its entirety, as it is claimed. If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design." *Id.* at 1378 (internal citations omitted). Viewed in isolation, this statement seemingly supports Defendant's position. However, similar to *Elmer* and *Door–Master,* the Federal Circuit's analysis in *Contessa* involved ornamental features rather than functional features. Specifically, the Federal Circuit criticized the district court for failing to consider "the ornamental appearance" of certain features of the accused product in comparing the product to the patented design. *Id.* The Federal Circuit explained that "all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement." *Id.* Thus, in the quotation from *Contessa* which Defendant cites, the word "features" refers to ornamental features rather than functional features. As a result, *Contessa* merely reinforces the holdings of *Elmer* and *Door–Master* that *ornamental* features can not be excluded from the infringement analysis if such ornamental features were not excluded from the patent application. *Contessa* did not involve functional features, and therefore does not support the proposition that functional features can only be excluded through the use of broken lines.

■■■ Finally, Defendant cites *L.A. Gear, Inc. v. Thom McAn Shoe Co. et al.,* 988 F.2d 1117 (Fed.Cir.1993) for the somewhat different proposition that "A design is considered in its entirety and not by individual elements." (Def.'s Mot. At 16.) While Defendant's statement is accurate in the context of determining the validity of

the design patent, *L.A. Gear* does not address the issue of whether a design should be considered in its entirety when engaging in an infringement analysis. In *L.A. Gear*, the defendants asserted that the patent at issue was invalid because the design was functional.[12] *Id.* at 1123. In arguing that the design was functional, the defendants argued that each element of the patented design has a utilitarian purpose. *Id.* The Federal Circuit observed that' "the utility of each of the various elements that comprise the design is not the relevant inquiry." *Id.* The Federal Circuit recognized that although individual elements serve functional purposes, that "does not mean ···. [that] the combination of these elements into the patented design is dictated by primarily functional considerations." *Id.* As a result, the Federal Circuit concluded that the design was primarily ornamental and that the patent was not invalid on the ground of functionality. *Id.* at 1123–24. Thus, the rule from *L.A. Gear* applies to a validity analysis, but *L.A. Gear* is silent on how the Court should conduct an infringement analysis. As a result, *L.A. Gear* does not suggest that the Court erred in excluding the functional elements from the infringement analysis.

Defendant's argument that functional features can only be excluded by broken lines finds no support in the caselaw, and few cases explicitly state that *Read* compels a district court to exclude functional elements from an infringement analysis. However, the handful of courts to have addressed this precise issue support this Court's approach. For example, in *Sunbeam Prods., Inc. v. Wing Shing Prods. (BVI) Ltd.*, 311 B.R. 378 (2004), the district court explained that to evaluate infringement, "the original claimed design, as a whole—as encompassed by the ornamental features but not the functional features—is compared against the improved or allegedly infringing design, also as a whole." *See also Black & Decker (U.S.) Inc. v. Pro–Tech Power Inc.*, 26 F.Supp.2d 834, 859 (E.D.Va.1998) (criticizing an expert's methodology of employing "a side-by-side comparison of the functional as well as nonfunctional differences between the two saws, instead of evaluating the overall visual impression created by the ornamental features of each product standing alone.").

In sum, Defendant's claim that the Court can only exclude functional features if those features are shown in broken lines finds no support in the caselaw. While *ornamental* features can only be excluded from the claim of the design patent through the use of broken lines, *functional* features must be excluded regardless of whether those features are disclosed through broken lines. Therefore, the Court did not err in excluding the functional feature of the '173 Patent.

### C. The Court Did Not Improperly Mix Issues of Claim Construction and Infringement

▮ Defendant argues that the Court must grant a new trial because the Court improperly mixed issues of claim construction and infringement before the jury.

▮ While the Court did not construe the '173 Patent prior to trial,[13] delaying claim construction until trial is not error because "the district court has considerable latitude in determining when to resolve issues of claim construction." *CytoLogix*

---

**12.** "A design patent is directed to the appearance of an article of manufacture ... If the particular design is essential to the use of the article, it cannot be the subject of a design patent." *L.A. Gear*, 988 F.2d at 1123.

**13.** Specifically, the Court had not determined whether the solid backplate depicted in the '173 Patent was functional or ornamental prior to trial.

*Corp. v. Ventana Medical Systems, Inc.,* 424 F.3d 1168, 1172 (Fed.Cir.2005); *see also Vivid Technologies, Inc. v. American Science & Engineering, Inc.,* 200 F.3d 795, 803 (Fed.Cir.1999) ("the stage at which the claims are construed may vary with the issues, their complexity, the potentially dispositive nature of the construction, and other considerations of the particular case."); *Sofamor Danek Group v. DePuy–Motech. Inc.,* 74 F.3d 1216, 1221 (Fed.Cir. 1996) (holding that the timing of claim construction is within the trial court's discretion). The only limitation on the district court is that the patent claims must be construed before the jury is instructed so that the Court can explain the scope of the claims to the jury. *See Exxon Chem. Patents v. Lubrizol Corp.,* 64 F.3d 1553, 1555 (Fed.Cir.1995).

When a district court does not construe the patent prior to trial, the Federal Circuit has held that it is improper for the jury to hear argument and testimony concerning claim construction:

> [B]y agreement the parties also presented expert witnesses who testified before the jury regarding claim construction, and counsel argued conflicting claim constructions to the jury. This was improper, and the district court should have refused to allow such testimony despite the agreement of the parties. The risk of confusing the jury is high when experts opine on claim construction before the jury even when, as here, the district court makes it clear to the jury that the district court's claim constructions control.

*CytoLogix,* 424 F.3d at 1172.

Defendant argues that the Court's refusal to construe the patent prior to trial made it difficult for Defendant to devise a trial strategy and prejudiced Defendant. Defendant also contends that issues of claim construction and infringement were improperly mixed before the jury, first during the Court's "surprise interruption" of Defendant's opening statement, and later during Plaintiff's elicitation of testimony on claim construction from one of Plaintiff's experts.

### 1. The Court's Decision to Delay Resolution of Claim Construction Did Not Prejudice Defendant

Defendant contends that the Court's refusal to construe the patent prior to trial made it difficult for Defendant to devise a trial strategy. For example, Defendant argues that it did not know whether to focus its defense on the backplate or other dissimilarities between the '173 Patent and Defendant's design. This argument lacks merit for two reasons. First, the Court has substantial discretion in determining when to resolve issues of claim construction. *See CytoLogix,* 424 F.3d at 1172; *Vivid Technologies,* 200 F.3d at 803; *Sofamor Danek,* 74 F.3d at 1221. Based on consideration of multiple factors, including the lack of complexity of the claim, court resources, and availability of the witnesses, this Court deferred resolving the issue of claim construction until trial.

Second, even if it were error to delay resolving the issue of whether the backplate was functional or ornamental, it was harmless error because Defendant was not prejudiced. Federal Rule of Civil Procedure 61 provides that a motion for a new trial should not be granted based on harmless error:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial

justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed.R.Civ.P. 61. "In other words, a new trial is not justified if an error was harmless." *Casumpang v. International Longshore & Warehouse Union, Local 142,* 411 F.Supp.2d 1201, 1214 (D.Hawai'i 2005). The party asserting the error had the burden of proving that substantial rights were violated by the alleged error. *Howard v. Gonzales,* 658 F.2d 352 (5th Cir.1981); *Sam Miller Bag Co. v. Burlington Northern, Inc.,* 641 F.2d 607 (8th Cir.1981); *Creekmore v. Crossno,* 259 F.2d 697 (10th Cir.1958).

Defendant has failed to show that substantial rights were violated because no prejudice resulted from the delay in claim construction. Although Defendant implies that it was forced to conduct the entire trial without knowing how the Court would resolve the backplate issue, the Court resolved the issue at an early point in the trial. Following opening statements and testimony from one witness, Rick Pruden, the Court heard evidence on claim construction *outside* the presence of the jury. First, the Court heard testimony from Arthur Hale, Jr., (Vol. II Tr: 11:4–37:19.), and Paul Kim (Vol. II Tr: 38:1–45:22.) concerning the functionality of the backplate. The Court then heard arguments from counsel for both parties. (Vol. II Tr: 45:24–49:20.) The Court recessed to reflect on the testimony and arguments. When court resumed, the Court ruled that the backplate was functional. (Vol. II Tr: 49:25.) The jury was then brought back in, and the Court addressed the jury concerning the issue of functionality:

> The question you will have to decide is whether the plaintiff's patent is infringed by defendant's product, that is, Exhibit 24. And you've heard a lot of discussion about this back plate on the plaintiff's patent. I am telling you that in comparing the plaintiff's patent to the defendant's wheel, Exhibit 24, you're not to consider the back plate. In other words, the back plate is not for you to consider. You're just to consider the other aspects of the patent as compared to the product.

(Vol. II Tr: 52:4–12.)

Defendant subsequently cross-examined all of Plaintiff's other witnesses (besides Pruden) and presented its own case-in-chief. Thus, from an early point in the trial, Defendant had notice that it should focus on dissimilarities between the '173 Patent and Defendant's design other than the backplate because the backplate was excluded from the infringement analysis. It is disingenuous for Defendant to suggest that its trial strategy was hampered by uncertainty where Defendant knew the backplate was a non-issue before (1) cross-examination of all but one of Plaintiff's witnesses, and (2) presentation of its own case-in-chief, and (3) closing arguments. Moreover, to the extent that Defendant claims it was precluded from questioning Pruden about the backplate, no prejudice resulted because ultimately the backplate was a non-issue for the infringement analysis. As a result, Defendant has failed to demonstrate that substantial rights were violated even assuming that the delay in resolving the claim construction issue constituted error.

*2. The Court's "Surprise Interruption" of Defendant's Opening Statement*

 Prior to selecting a jury, the Court held a hearing with the parties "to make sure that both sides understand the parameters of the trial and the rulings." (Vol. 1 Tr: 4:12–14.) The Court explained that "there is the question of whether the backplate is ornamental or functional." (Vol. 1 Tr:5:23–24). The Court explained

that whether the backplate is ornamental or functional is ("for the court to decide, and at the appropriate time, the court will make that decision and inform the jury.") (Vol. 1 Tr:5:24–6:1.)

During Defendant's opening statement, Defendant's counsel described the ordinary observer test for infringement. (Vol. 1 Tr:45:5–21.) Defendant's counsel explained that "it's going to be up to you to try to decide, according to the testimony you've heard, whether an ordinary observer would regard the Fatal wheel that we sell as substantially the same as the patented design." (Vol. 1 Tr: 45:8–11.) This was a valid description of the ordinary observer test.

However, Defendant's counsel proceeded to emphasize that the '173 Patent depicted a solid surface behind the wheel, while Defendant's Fatal Wheel lacked such a solid surface:

> [Plaintiff's product has a] solid surface behind these holes. So that is going to be the focus of a lot of your deliberations in this case ... And you're going to hear the witnesses say, well, the Fatal wheel doesn't have any solid surface behind these holes. There's no dispute there. And you will have to come to the conclusion, can somebody see a wheel that's a normal wheel with holes in it and get confused with a spinner design that has a solid surface behind it and think they're the same thing. That's what this case is about. Could someone, an ordinary observer, make that sort of confusion. And that's where you're going to have to go in your deliberations.

(Vol. 1 Tr: 45:2–21.)

At this point, the Court was compelled to interject. The Court had previously warned counsel that the question of whether the backplate is ornamental or functional remained undecided and the court would make that decision at the appropriate time. By emphasizing the backplate was the cru-

cial part of the infringement analysis, Defendant risked prejudicing the jury's view of the '173 Patent and the Fatal Wheel before the Court instructed the jury on how to apply the ordinary observer test. Given this risk, the Court was compelled to comment on the backplate to mitigate any prejudice:

> Let me just interrupt for a moment because I think it may be important to clarify something, and this is not to take issue at all with counsel, because what he is saying, I think, is correctly previewing the defense side of the case. But ultimately, a decision will have to be made as to whether this so-called solid-part in back of the wheel, the backplate, is functional or a design. And that's something that the court, not you, will have to decide at some point. If the court decides that the backplate is functional, then the fact that there is a backplate on plaintiff's patent and not on the alleged infringing design will not be something that you will consider in comparing the patent with the infringing product. If on the other hand the court decides that the backplate is not functional, that is, it is part of the design, then, as Mr. Palmatier has explained, that will be something that you will have to consider in determining whether there is substantial similarity.

(Vol. 1 Tr: 45:22–46:15.)

Defendant contends that the Court's instruction that "[Defendant's] principal non-infringement defense could later be barred ... made it impossible for [Defendant] to defend itself without prejudice." (Def.'s Mot. at 25.) However, the Court's statement did not prejudice Defendant in any conceivable manner because the Court correctly stated the law, and the instruction was consistent with the subsequent jury instructions.

Defendant's objection to the statement appears to derive from a concern that the Court improperly mixed claim construction and infringement analysis through this comment. However, the record demonstrates that the Court's comments did not involve claim construction. While the Court recognized that the claim construction would determine whether the backplate were functional, the Court's instruction was directed at the question of infringement. Specifically, Defendant's comment that the backplate "is what this case is about" improperly suggested that the infringement analysis should focus on the backplate. This was an improper statement of law because the Court had not yet determined whether the backplate would be included in the ordinary observer test. As a result, a preliminary instruction regarding infringement was necessary to mitigate any prejudice caused by Defendant's statement.[14] Therefore, this limited instruction did not constitute the improper mixing of claim construction and infringement because the instruction focused solely on infringement.

### 3. Plaintiff's Elicitation of Testimony on Claim Construction

 Defendant asserts that the Court erred in permitting Plaintiff to elicit testimony on the subject of claim construction before the jury.

### i. Pruden's Single Comment Does Not Rise to the Level of CytoLogix

Plaintiff's first witness[15] was Rick·Pruden. Pruden is a vice president for Plaintiff and created the design that resulted in the 173 Patent. During the direct examination, Plaintiff's counsel elicited testimony from Pruden concerning the backplate:

Q: You said that [Plaintiff's] floater spinner wheel has a backplate or back surface behind the vehicle wheel front surface?

A: Yes. This design and any other spinner or floater.

Q: Okay. Is there a purpose to it? Why do you use that?

A: When we first developed a spinner or a floater, we were very concerned about children putting their finger in there in a driveway and spinning it, actually cutting their fingers off, and that has happened sir.

[Defense Counsel]: Objection—

The Court: What ground?

[Defense Counsel]: This is a question of law for the court.

The Court: Overruled. You can proceed.

A: Thank you, sir. So we put a solid surface behind the design to ensure that we don't have somebody losing a finger. (Vol. I. Tr: 62: 22–63:13.)

Defendant asserts that this comment by Pruden constituted the presentation of

**14.** Additionally, the Court notes that it is somewhat disingenuous for Defendant to object to this instruction because Defendant's deliberate conduct prompted the instruction. Throughout the litigation, Defendant repeatedly expressed displeasure with the Court's decision to construe claim construction until trial. Defendant's counsel's comment that the backplate "is what this case is about," in disregard of the Court's admonition that it had not yet determined whether the backplate was functional or ornamental, appeared to be a deliberate attempt to cause another mistrial. Although Defendant's comments did not warrant a mistrial, an instruction was clearly necessary to mitigate any prejudice.

**15.** Plaintiff first called Norberto Chavez for the sole purpose of authenticating defendant's wheel that he purchased and Plaintiff wished to admit as Exhibit 24. (Vol. I. Tr: 48:22–24.) Even though Chavez was sworn in, Chavez never testified because Defendant testified to the wheel's authenticity. (Vol. I. Tr: 49:1–3.) As a result, Chavez never testified. Therefore, the Court refers to Pruden as Plaintiff's first witness.

claim construction issues before the jury necessitating a new trial. However, under *CytoLogix* a single comment does not constitute improper presentation of claim construction warranting a new trial.

In *CytoLogix*, both parties presented expert witnesses who testified before the jury regarding claim construction. The Federal Circuit explained that "the conflicting expert views as to claim construction created confusion and may have led to a verdict of infringement with respect to the asserted claims of the [patent] that was not supported by substantial evidence under the district court's claim construction." 424 F.3d at 1173.

The present case is distinguishable from *CytoLogix* in two respects. First, this Court did not permit multiple experts to testify regarding claim construction. In fact, it is arguable whether Pruden's comment should be construed as claim construction testimony because Pruden did not testify about how he believed the claim should be construed. Instead, Pruden discussed a function of the backplate. While the comment relates to claim construction, it differs substantially from an expert opinion concerning how a patent should be construed.

Second, Pruden's comment could not have created confusion and created a verdict of infringement that was not supported by substantial evidence. In *Cyto-Logix*, the conflicting expert claim constructions may have confused the jury when it attempted to apply the district court's claim construction. In contrast, no such confusion could have existed in the present case because Pruden's comment was consistent with the Court's subsequent claim construction. As a result, Pruden's comment could not have caused the jury to reach a verdict of infringement which was not supported by substantial evidence. Therefore, under *CytoLogix*, a single comment does not

constitute improper presentation of claim construction warranting a new trial.

*ii. Even If the Isolated Comments Were Improper, the Error Was Harmless*

 Even if Pruden's comment constituted the improper presentation of claim construction, its admission is harmless error in light of the Court's ruling that the backplate was functional. As explained above, an error is harmless unless it affects the substantial rights of the parties. Fed.R.Civ.P. 61. The party asserting the error had the burden of proving that substantial rights were violated by the alleged error. *Howard*, 658 F.2d 352; *Sam Miller Bag Co.*, 641 F.2d 607; *Creekmore*, 259 F.2d 697.

Defendant has failed to show that substantial rights were violated by the admission of Pruden's statement. As previously explained, Pruden's statement concerning the functionality of the backplate was consistent with the Court's subsequent claim construction. In contrast to *CytoLogix*, where jurors were potentially confused by differing claim constructions, there was no risk of confusion in this case because the jurors were only exposed to a single claim construction. In addition, any potential confusion was mitigated by the Court's previous instruction to the jury that it was solely the Court's duty to construe the claim. *See* (Vol. 1 Tr: 45:22–46:15.)

Defendant has failed to point to any other potential prejudice resulting from Pruden's comment. Therefore, Defendant has failed to meet its burden of demonstrating that substantial rights were violated. "[A] new trial is not justified if an error was harmless." *Casumpang*, 411 F.Supp.2d at 1214. Even if admission of Pruden's comment constituted error, a new trial is not warranted because the error was harmless.

In sum, neither the delay in claim construction until trial, nor the Court's interruption of Defendant's opening statement, nor the admission of Pruden's comment concerning the functionality of the backplate constitute error warranting a new trial.

### D. The Evidence Was Not Insufficient to Support Infringement

Defendant argues that the evidence was insufficient, as a matter of law, to establish infringement. (Def.'s Mot. at 20.) Defendant asserts that several of Plaintiff's witnesses identified differences between the '173 Patent and Defendant's device including the convex versus concave shape of the wheels, the number of simulated rivets, and the size of the apertures, spikes and center cap. (*Id.*) Defendant contends that such small differences compel a finding of non-infringement as a matter of law.

Defendant's argument that it is entitled to JMOL on infringement pursuant to Rule 50(b) was waived due to Defendant's failure to move for JMOL pursuant to Rule 50(a) prior to submission of the case to a jury. *See Farley*, 786 F.2d at 1346; *Janes*, 279 F.3d at 886–887 (9th Cir.2002). However, a new trial may be granted if "the verdict is contrary to the clear weight of the evidence," *Graves*, 339 F.3d at 839 and there is no requirement that a motion for a new trial be made prior to submission of the case to the jury. Therefore, the Court will analyze whether the verdict of infringement was contrary to the clear weight of the evidence for the purpose of determining whether Defendant is entitled to a new trial.

### 1. Legal Standard for Infringement of a Design Patent

In determining whether an accused design infringes a design patent claim, a court must compare the patented design to the accused design. This comparison involves two tests, both of which must be satisfied in order to find infringement. The first is the "ordinary observer" test, which "requires comparison of the two designs from the viewpoint of the ordinary observer to determine whether the patented design as a whole is substantially the same as the accused design." *Lawman Armor Corp. v. Winner International, LLC*, 437 F.3d 1383, 1384 (Fed.Cir. 2006). The second test is the "points of novelty" test, under which a court must determine whether "the accused design appropriates the novelty which distinguishes the patented design from the prior art." *Contessa*, 282 F.3d at 1377(citing *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984)). Infringement of a design patent is a question of fact. *Catalina Lighting. Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1287 (Fed.Cir.2002).

### i. Step 1: Ordinary Observer Test

In applying the ordinary observer test, the Supreme Court held that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co. v. White*, 81 U.S. 511, 528, 14 Wall. 511, 20 L.Ed. 731 (1871). To apply the test correctly, the Court must not break the patented design into its individual ornamental elements but instead should examine the patented design as a whole. *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed.Cir.2006). Exact identity between the patented design and the accused design is not required. *Brooks*, 393 F.3d at 1383.

### ii. Step 2: Points of Novelty Test

The points of novelty test requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art. *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed.Cir.1984). If the accused product does not contain the novelty, there can be no infringement as a matter of law even if the ordinary observer test is satisfied.

Plaintiff contended that the point of novelty in the design was the "spoke outer ends having a deep inward v-cut with an oval cut inwardly from the v-cut." Defendant contended that the plaintiff's design has two points of novelty: (1) "a solid surface shown in the five oval apertures and the five v-shaped apertures," and (2) "see through v-shaped openings in the inwardly directed radial spikes."

### 2. Application of the Infringement Test

Defendant correctly asserts that several of Plaintiff's witnesses identified differences between the '173 Patent and Defendant's device. Even if the Court disagreed with the jury's verdict, "[t]he court is not free to set aside a verdict merely because it would have ruled differently, or believes that the jury should have drawn different inferences and conclusions." *Maxwell v. J. Baker. Inc.*, 875 F.Supp. 1371, 1378 (D.Minn.1995). Instead, the Court is limited to analyzing whether "the verdict is contrary to the clear weight of the evidence," *Graves*, 339 F.3d at 839.

Having reviewed the record, the Court cannot conclude that the verdict is contrary to the clear weight of the evidence. The jury returned a special verdict form which asked the jury five questions. The first question asked the jury whether plaintiff "has proved by a preponderance of the evidence that defendant's accused FATAL wheel satisfies the ordinary ob-server test?" (Special Verdict Form, Nov. 13, 2006.) The jury answered yes. (*Id.*) The second question asked the jury whether plaintiff "has proved by a preponderance of the evidence that defendant's accused FATAL wheel satisfies the point of novelty test?" (*Id.*) The jury answered yes. (*Id.*) Preceding question three, the special verdict form contained the following instruction: "If you answered YES to **BOTH** questions 1 and 2, then Defendant's FATAL wheel *infringes* Plaintiff's '173 patent and you must answer YES to question 3. If you answered NO to **EITHER** question 1 or 2, then Defendant's FATAL wheel *does not infringe* Plaintiff's patent and you must answer NO to question 3." (*Id.*) (emphasis in original). Question three asked "Does Defendant's FATAL wheel infringe Plaintiff's '173 patent?" The jury answered yes. (*Id.*)

Evidence was presented at trial which supported the jury's findings that defendant's accused FATAL wheel satisfies the ordinary observer test and the point of novelty test. Plaintiff's witnesses Pruden and Hale both identified similarities between the '173 Patent and Defendant's design and testified that the similarities might result in consumer confusion. *See* (Vol. I. Tr. 66:9–68:17; 144:18–25 Pruden testimony); (Vol. II. Tr. 142:16–143:2.) (Hale testimony). Plaintiff's witnesses Pruden, Hale, and Palmer also provided testimony supporting a jury finding that Defendant's wheel satisfied the ordinary observer test. *See* (Vol. I. Tr. 138–139; 146–147) (Pruden testimony); (Vol.II. Tr. 139–141.) (Hale testimony); (Vol. I. Tr. 161–162:.; Vol. II. Tr. 54–71.) (Palmer testimony). Thus, evidence was presented at trial supporting the jury's finding of infringement.

Defendant is correct in asserting that various witnesses identified differences between the wheels such as the number of

simulated rivets and the sizes of the apertures and spikes, *see, e.g.,* (Vol. I. Tr: 126:11–12, 121–126; Vol. II. Tr. 94:3–9, 150:12–15, 122–128, 149–163.). However, "[u]nder *Gorham,* the focus is on the overall ornamental appearance of the claimed design, not selected ornamental features." *Elmer,* 67 F.3d at 1578. As demonstrated by the testimony of Plaintiff's witnesses, as well as a side-by-side comparison of the '173 Patent and the accused device, there was a substantial visual similarity in overall appearance between the '173 Patent and accused device. Thus, despite differences in selected ornamental features, there was sufficient evidence for the jury to find infringement. As a result, the Court concludes that the verdict of infringement was not contrary to the clear weight of the evidence.[16]

### E. The Evidence Was Not Insufficient to Support a $48.25/wheel Royalty

██ The jury awarded Plaintiff $300,000 in lost royalty damages. This award equals a royalty of $48.50 per wheel sold. Defendant argues that it is entitled to judgment as a matter of law on the royalty amount because "[t]he grossly large size of the jury's $300,000 award in comparison to MHT's admitted royalties makes the damage award unreasonable as a matter of law." (Def.'s Mot. at 24.)

Defendant's argument that it is entitled to JMOL pursuant to Rule 50(b) was waived due to Defendant's failure to move for JMOL pursuant to Rule 50(a) prior to submission of the case to a jury. *See Farley,* 786 F.2d at 1346; *Janes,* 279 F.3d at 886–887 (9th Cir.2002). However, a new trial may be granted if "the verdict is contrary to the clear weight of the evi-

dence," *Graves,* 339 F.3d at 839, and there is no requirement that a motion for a new trial be made prior to submission of the case to the jury. Therefore, the Court will analyze whether the award of a $48.25/ wheel royalty was contrary to the clear weight of the evidence for the purpose of determining whether Defendant is entitled to a new trial on the issue of damages.

Plaintiff's witness, Art Hale, testified that Plaintiff had licensed one of its wheel designs for "like $75 a wheel." (Vol.II. Tr. 146:2–8.) Hale also testified that he would have tried to license the '173 Patent design to Defendant for between $50 and $100 a wheel. (Vol.II. Tr. 146:25–147:6.) Based on this testimony, Plaintiff argued that the jury should award a reasonable royalty between $50 and $100 per wheel. Although Plaintiff's royalty evidence was somewhat vague, the Court finds that there was sufficient evidence to support the jury's finding of a $48.25/wheel royalty. Therefore, the Court concludes that the jury's award of a $48.50/wheel royalty was not contrary to the clear weight of the evidence.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment as a matter of law or a new trial is DENIED.

IT IS SO ORDERED.

---

**16.** Whether or not this Court would have arrived at a different verdict is irrelevant because "a district court may not grant or deny a new trial merely because it would have arrived at a different verdict." *United States v. 4.0 Acres of Land,* 175 F.3d 1133, 1139 (9th Cir.1999) (citing *Wilhelm v. Associated Container Transp. (Australia) Ltd.,* 648 F.2d 1197, 1198 (9th Cir.1981)).